[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR CONTEMPT (#128)AND MOTION FOR MODIFICATION (#129)
This post-judgement matter is before the court on two motions brought by the plaintiff, Sylvia Tarifi. She has filed a motion for contempt, claiming that the defendant, Mohamed Tarifi is in contempt of court for failure to pay college expenditures for the children as ordered by court. The parties were divorced on October 24, 1985. The judgment of dissolution of marriage was after an uncontested hearing. The parties submitted a written agreement which was incorporated by reference in the judgment file. The judgment provided, in part, as follows: "Defendant Husband and plaintiff Wife to share the cost of their children's college education, including tuition, room and board, on a pro rata basis in accordance with their respective incomes; provided, however, in no event shall the Wife contribute less than 15% of said college education expenses."
The plaintiff is also, by way of Motion for Modification, seeking an order of payment of child support, to be paid by the defendant to her for the parties' remaining minor child, Noah.
The original judgment of the parties made no provision for payment of child support. There were provisions for the payment of alimony, which were modified on April 15, 1986. On July 28, 1987, those alimony provisions were further modified. At no time to date has there been a child support order (other than the payment of college, and, certain insurance orders) entered in this matter.
There is no dispute that it is entirely appropriate to grant the motion for modification and order child support. Indeed, the 1) passage of the Child Support Guidelines, 2) the reduction in CT Page 1675-A alimony received by the plaintiff, and 3) the change in the parties' financial situations all result in a finding that there has been a substantial change in the circumstances of the parties' since the time of entry of the original judgment, when no child support was ordered. The defendant's income has increased a significant amount, as have his expenses; his assets have almost doubled, yet his debt is a quarter of what it was. The plaintiff's income has grown by leaps and bounds; her expenses are much greater; her assets have reduced and her debts have increased significantly. The court finds a substantial change of circumstances of the parties.
The parties' combined allowable net exceeds $1,750/week. Therefore, the court looks to the Child Support Guidelines only for the presumptive minimum support to be ordered of $327/week. The court has considered all of the credible evidence and the statutory criteria for the order of child support. The court orders the defendant to pay child support to the plaintiff in the amount of $327.00 per week. Pursuant to the agreement of this parties, this order is retroactive to December 6, 1996. If the parties cannot come to an agreement as to how this should be paid, they can seek an order from the court regarding the same.
To dispose of the Motion for Contempt, the court makes the following additional findings based upon the credible evidence provided at hearing. The parties have two children other than Noah. They are David and Daniel. One son is a student matriculated at the University of Richmond, expected to graduate in 1997. The other son is attending Quinnipiac College; he previously attended the University of Rhode Island. The court finds that the parties had a meeting at the defendant's condominium home with the two boys present in the Spring of 1992. They discussed college costs; Mrs. Tarifi disclosed that she was earning $35,000 and Mr. Tarifi refused to disclose what he was earning. He refused to pay for David's college, stating it was too expensive. He later called Mrs. Tarifi and stated he would pay half of the college expenses. From that time forward, Mrs. Tarifi sent Mr. Tarifi the college bills with the amount of half indicated. The court finds that there was no agreement by Mrs. Tarifi to accept half in fulfillment of Mr. Tarifi's obligation. Rather, she took what she could get because he refused to disclose his income so that the proper amount for each party could be computed by them. In the fall of 1995, she commenced this Motion for Contempt when Mr. Tarifi refused to pay any of Daniel's tuition for that semester. Subsequently, he paid one CT Page 1675-B son's tuition bill for the semester commencing January, 1996.
The court finds Mr. Tarifi in willful contempt of court. He knew what the court order was. He willfully refused to disclose his income to Mrs. Tarifi frustrating the order of pro rata sharing based on income. The arguments before this court on how to define "income" do not extinguish the contempt; any confusion as to this issue has erupted since Mr. Tarifi's contumacious conduct.
The parties have introduced as exhibits their 1992-1994 tax returns, other applicable income information and documents regarding the college expenses for David and Daniel. In recapitulation of testimony and evidence, as aids to the court, the parties have also supplied charts of college expense payment recapitulation, which the parties acknowledge are the sums actually paid by each party, respectively.
In furtherance of what purge orders the court might enter, the parties each view the judgement's use of the word "income" differently. The plaintiff would have the court include all income of each of the parties, including, by way of example, pre-tax benefits and stock options exercisable at some future date. The defendant suggests an approach that would consider adjusted gross income or the net income of the parties. The agreement which is incorporated in the judgment is silent as to the definition of the word "income." The agreement to pay college expenses is in the nature of post-majority support for the parties' children. It is entirely consistent, then, to refer to the Guidelines in defining income available for post-majority child support. However, given the extreme expense of college, it would only be fair to include, also, alimony paid by one party to the other. Where each party is contributing to the hefty expenses of college, court-ordered redistribution of income must be considered. College is more than room and board (more closely analogous to a miner child's base need). Tuition, books, lab fees, etc. require a consideration of all cash flow availability. The agreement between the parties is consistent with this finding. A mandate of "pro rata sharing" can only be required of money available to share.
The court finds that income is that amount (including alimony receipts) of money which is available to a party after deducting necessary tax payments (and court order alimony payments) and other; items which are a condition of employment. Alimony is CT Page 1675-C income and is includable in Mrs. Tarifi's income for purposes of determining her respective share of the college obligation; further, it is deductible by Mr. Tarifi in determining his share. Mr. Tarifi's 401K income accruals yearly are not a condition of his employment but are, instead, pre-tax income to him that he can realize at any time that he wants. However, to do so he will suffer an early withdrawal penalty and a tax obligation to the state and federal governments. That calculation should be performed for each year at issue. While there is evidence that each party has had a tax refund entitlement in some of the years at issue, no findings of reduction of tax rate are made inasmuch as there is insufficient evidence before the court to determine the appropriate tax rate. Therefore each party's current rate (for any given year) is utilized for this calculation. The medical pre-tax dollars are benefits lost to Mr. Tarifi unless utilized for their restricted purpose and therefore should not be a part of this calculation. The stock options are not a source of present disposable income and therefore although a part of Mr. Tarifi's benefit package are not part of the calculation here.
TARIFI CALCULATIONS
 1992 - Mr. Tarifi
Wages $92,451.84 plus 8,728.00 401K contrib. ---------- 101,179.84
less 11,750.00 Alimony Paid
plus 158.00 1/2 Interest Income (joint return) plus 13.00 1/2 Dividends (joint return) plus 256.00 Taxable Refunds
less 3,441.00 Social Security paid less 1,467.11 Medicare Tax (Med T.) (21.631.41 62, 784.45 = 37.649%) less 4,160,29 State Income Tax (SIT) less 18,004.01 Federal Income Tax (FIT) ----------- $62,784.43 less 872.80 10% of 401K penalty 37.64% less 3,285.22 Eff. Tax Rate on 401K (SIT, Med T., FIT) ----------- $58,626.41 Mr. Tarifi's Income CT Page 1675-D
1992 - Mrs. Tarifi
Wages $44,260.75 plus 11,750.00 Alimony Received ---------- $56,010.75
less 4,050.35 Federal Income Tax less 1,665.52 Federal Income Tax less 2,012.54 Social Security less 731.55 Social Security less 171.09 Medicare Tax less 277.10 State Tax less 632.69 State Tax -----------
less 900.00 Business Loss plus 156.00 Interest Income ----------- $45,235.31 Mrs. Tarifi's Income
 $58,262.41 56.45% Mr. Tarifi $45,235.31 43.55% Mrs. Tarifi
$15,670.00 1992 College Expenses
 $ 8,845.71 Mr. Tarifi's Share 7,835.00 Mrs. Tarifi Paid ---------- $ 1,010.71 Amount Due to Mrs. Tarifi for 1992 College Expenses
Mr. Tarifi's arrearage for 1992 college expenses is found to be $1,010.71. There is no reason for the court to perform the additional voluminous calculations, with this model now in place. Counsel are ordered to perform the same calculation, using the model above, for 1993-1996, and add those shortfalls (or credits, as the case may be) to the 1992 arrearage, and, present that as a stipulated arrearage on April 17, 1996, in court. That stipulated arrearage is ordered paid within 90 days, of its submission to court, to Mrs. Tarifi. Counsel fees are awarded to Mrs. Tarifi in the amount of $2,163 including fees and costs, to be paid within 90 days.
Munro, J. CT Page 1675-E